**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NANCI M. GOLDBERG, Civil Action No. 2:22-cv-141

Plaintiff,

v.

FOX CHAPEL AREA SCHOOL DISTRICT,

Defendant. JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Nanci M. Goldberg, by undersigned counsel, files this Complaint and in support alleges the following.

### I. Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §626(c)(1), and 28 U.S.C. §§1331 and 1343(a)(4).

### II. Venue

2. Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in the Allegheny County.

### III. Administrative Remedies

3. Goldberg has satisfied all procedural and administrative requirements set forth in 29 U.S.C. §626 in that:

a. On or about June 21, 2021, Goldberg filed a timely charge with the EEOC alleging age discrimination.

b. On or about June 21, 2021, Goldberg filed a timely Complaint of Discrimination with the Pennsylvania Human Relations Commission (PHRC) alleging age discrimination.

    c. Plaintiff received a Notification of Dismissal from the EEOC dated November 3, 2021.

d. This case was filed more than 60 days after filing of the EEOC charge and within 90 days of receipt of the Notification of Dismissal.

## IV. Parties

4. Goldberg is an adult individual who resides in Allegheny County, Pennsylvania.

5. Defendant, Fox Chapel Area School District, is a school district and political subdivision of the Commonwealth of Pennsylvania with its principal place of business at 611 Field Club Road, Pittsburgh, Pennsylvania 15238.

6. At all times relevant hereto, Defendant is and was an employer within the meaning of 29 U.S.C. §630(b), in that it is engaged in an industry affecting interstate commerce and employs more than 20 employees.

7. At all times relevant hereto, Defendant acted or failed to act by and through its duly authorized agents, servants and employees, who conducted themselves within the scope and course of their employment.

## V. Facts

8. Goldberg started working for Defendant in January 1992 as an Art Teacher.

9. For the past 28 years, Goldberg was assigned to the Middle School.

10. Goldberg also held two additional positions as Department Head and Middle School Calendar Facilitator.

11. At all times during her employment, Goldberg worked diligently and exhibited a high level of professionalism and competence, while being a well-known and highly respected educator who has received many accolades for the good work she has

done with the Middle School students and for the community.

12. As Middle School Department Head, Goldberg was constantly writing and refining the Middle School curriculum.

13. Goldberg also co-founded a mental health project called The Positive Painting Project which focuses on the mental wellbeing of Middle School students and also started a small, free art gallery with a then-current Middle School student and his parent.

14. On May 25, 2021, Program Principal Laura Miller met with Goldberg and the other two Middle School Art Teachers and told them that she needed “a volunteer” to transfer to teach at the Elementary School level.

15. Three hours later, Middle School Principal Jonathan Nauhaus told one of the other two Middle School Art Teachers, who is significantly younger and much less tenured, not to apply for the Elementary School position because she is “not the person who’s going”.

16. Nauhaus’ statement completely contradicts Miller’s statement that she needed someone to volunteer to transfer.

17. Unlike Goldberg, this significantly younger Middle School Art Teacher would be well suited to teach at the Elementary School level, due her having done so for three of her six years of teaching for Defendant.

18. On June 3, 2021, without holding a mandatory conference per the term of the collective bargaining agreement, Miller verbally informed Goldberg that she would be involuntarily transferred to one of Defendant’s Elementary Schools.

19. Miller also failed to provide Goldberg with a specific reason for Defendant’s

decision to transfer her, also in violation of the collective bargaining agreement.

20. In response to being told of Defendant's decision to transfer her, Goldberg told Miller that the decision was based on her age.

21. Rather than address Goldberg's allegation, Miller recited a conclusion that the decision to transfer Goldberg was "what is best" for Defendant and the students and that the decision was "a business decision" and "not personal".

22. Goldberg asked Miller if Defendant was trying to get rid of her.

23. Miller did not respond to Goldberg's question and instead recited the same rationale above.

24. On June 7, 2021, Goldberg met with Defendant's Deputy Superintendent, Dr. David P. McCommons, to discuss the transfer.

25. McCommons likewise failed to provide Goldberg with a specific reason for the decision.

26. In anticipation of the upcoming June 14, 2021 School Board meeting, Goldberg's legal counsel contacted Defendant's solicitor, through a letter dated June 10, 2021, to complain that this decision was age-based.

27. On June 15, 2021, McCommons, emailed Goldberg written confirmation of the decision to involuntarily transfer Goldberg from the Middle School to an Elementary School.

28. Defendant's Policy No. 309 provides for the following factors Defendant is to consider when involuntarily transferring a Teacher:

(a) The impact of the proposed assignment on the educational program;

(b) The employee's background, experience and preparation for the position;

(c) The employee's success in the former position;

(d) The employee's length of service in Respondent and in the position presently held;

(e) The recommendation of the employee's administrative supervisors; and

(f) The administrative and operational efficiency advanced by the proposed assignment.

29. The above factors point to Goldberg being the least logical choice to be chosen for the involuntary transfer.

30. Defendant treated other similarly situated teachers, who are significantly younger, more favorably than Goldberg by not forcing them to transfer from the Middle or High Schools.

31. Defendant's decision to transfer Goldberg was an adverse employment action.

32. Defendant's action was adverse in part because:

(a) Goldberg's nearly three-decades-long skill set focused on teaching middle school students;

(b) Goldberg was not properly equipped to teach a completely different population;

(c) Goldberg would be disadvantaged by being working in an Elementary School while fulfilling the requirements of being Middle School Department Head and Middle School Calendar Facilitator; and

(d) Goldberg did not receive proper or sufficient training to use the processes and procedures in place in the Elementary School.

33. As a result of being involuntarily transferred, Goldberg was forced to take a

year-long sabbatical at a reduced rate of pay due to her extreme emotional distress.

**Count I - ADEA**

34. Goldberg incorporates paragraphs 1 through 33 as though the same had been fully set forth at length herein.

35. Defendant transferred Goldberg because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §623(a)(1).

36. Defendant's violation of the ADEA was willful.

WHEREFORE, Goldberg demands judgment as follows:

a. That Defendant be ordered to reinstate Plaintiff into a suitable position, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b. That Defendant be required to compensate Plaintiff for the full value of wages, she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the ones which Plaintiff was denied;

c. That Defendant be required to provide Plaintiff with front pay;

d. That Defendant be required to compensate Plaintiff for lost benefits, including pension benefits until Plaintiff's normal retirement date;

e. That a final judgment in favor of Plaintiff and against Defendant be entered for liquidated damages in an amount equal to the amount of wages due and owing Plaintiff as provided by 29 U.S.C. §626(b) and 216(b);

f. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the ADEA;

g. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

    h. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

**Count II – ADEA Retaliation**

37. Goldberg incorporates paragraphs 1 through 36 as though the same had been fully set forth at length herein.

38. Goldberg engaged in protected activity by complaining that Defendant's decision to transfer her was illegal and based on her age.

39. Defendant transferred Goldberg because of her protected activity in violation of the Age Discrimination in Employment Act, 29 U.S.C. §623(a)(1).

40. Defendant's violation of the ADEA was willful.

WHEREFORE, Goldberg demands judgment as follows:

a. That Defendant be ordered to reinstate Plaintiff into a suitable position, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b. That Defendant be required to compensate Plaintiff for the full value of wages, she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the ones which Plaintiff was denied;

c. That Defendant be required to provide Plaintiff with front pay;

d. That Defendant be required to compensate Plaintiff for lost benefits, including pension benefits until Plaintiff's normal retirement date;

e. That a final judgment in favor of Plaintiff and against Defendant be entered for liquidated damages in an amount equal to the amount of wages due and owing Plaintiff as provided by 29 U.S.C. §626(b) and 216(b);

f.    That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the ADEA;

g.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

h.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted:

*/s/ Colleen E. Ramage*
Colleen E. Ramage
PA I.D. No. 64413

Nikki Velisaris Lykos
PA I.D. No. 204813

Ramage Lykos, LLC
525 William Penn Place
28th Floor
Pittsburgh, PA  15219
(412) 325-7700 – phone
(412) 325-7755 – fax

cramage@ramagelykos.law
nlykos@ramagelykos.law

Attorneys for Plaintiff